UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
MICHAEL OGIDI-GBEGBAJE,             )
           Plaintiff,               )
                                   )
    v.                             )    CIVIL ACTION
                                   )    NO. 17-40093-TSH
                                   )
                                   )
JAMIE MAGARIAN,                     )
           Defendant.               )
_____)

## MEMORANDUM OF DECISION
**January 22, 2020**

**HILLMAN, D.J.**

### Background

Michael Ogidi-Gbegbaje ("Ogidi" or "Plaintiff") has filed a federal civil rights claim against Massachusetts State Trooper Jamie Magarian ("Magarian" or "Defedant") under 42 U.S.C. §1983 alleging that Defendant violated his Constitutional right to be free from use of excessive force against him.[1] Specifically, Plaintiff alleges that he was tasered, slammed down to the ground, and dragged causing him serious bodily injury. This Memorandum of Decision addresses Defendant Jamie Magarian's Motion for Summary Judgmnet (Docket No. 38). For the reasons set forth below, that motion is *granted*.

---

[1] Plaintiff, who is proceeding *in form pauperis*, also named the Charlton Police Department and the Commonwealth of Massachusetts as defendants. However, those claims were dismissed after review of his Complaint pursuant to the screening provisions of 28 U.S.C. § 1915.

## Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party.'"'" *Id.* (citation to quoted case omitted).

## Facts

### Local Rule 56.1; Defendant's Facts Deemed Admitted

In his opposition, Ogidi has included a "Statement of Facts" which reads verbatim, as follows:

> On July 12 2016. As I parked my tractor trailer working for Western Express, at the pilot service center in Massachusetts. I was confronted by this hostile trooper jamie magrain who told me to immediately give him the keys to my tractor trailer, owned by western express declined and ask him what was the problem, and he immediately slammed me on the pavement after putting one handcuff on my hand. I was injured in the process.

This Court's Local Rules provide that a motion for summary judgment "shall include a concise statement of the material facts of record as to which there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation … A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation …. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." LR..D.Mass. 56.1.

Although Ogidi is proceeding pro se, he is required to comply with this Court's procedural rules. Therefore, he was required to file a Rule 56.1 statement setting forth the facts which he contends are in dispute. He did not do so. Moreover, the factual statement he did include did not cite to supporting documentation. Accordingly, the Court must deem the

Defendant's statement of material facts admitted by Ogidi. *See Strahan v. Diodati*, 755 F. Supp. 2d 318, 324 (D. Mass. 2010)f(where pro se plaintiff failed to submit required concise statement of material facts as to which there exists genuine issue to be tried pursuant to L.R., 56.1, material facts set forth in defendants' motion for summary judgment are deemed admitted).

## Ogidi's Arrest

Magarian is a Trooper with the Massachusetts State Police. All actions he took concerning Ogidi were taken in his capacity as a sworn trooper, that is, under color of law. Magarian was on duty on July 12, 2016 when he and Trooper Peter Neilly were dispatched to a report of an Indecent Assault and Battery on a seventeen-year-old girl at the Charlton Service Plaza on the Massachusetts Turnpike. The State Police dispatcher advised that the subject who committed the assault and battery had left the scene in a white, tractor trailer bearing a Tennessee registration (the dispatcher provided registration number) and with the writing "Western" appearing somewhere on the trailer.

At approximately 7:30 p.m., Magarian arrived at the Charlton Service Plaza. He interviewed the girl ("Girl 1") and her friend ("Girl 2") (also seventeen years old) and Girl 2's mother, Kelly Hockenberry ("Hockenberry"). Hockenberry reported that the three women were in the service plaza when Girl 1 reported to Hockenberry that a man had just walked behind her and grabbed her buttocks. Mrs. Hockenberry reported that Girl 1 pointed out the man. Hockenberry also reported that, after the assault, Girl 1 identified the man standing in line at the McDonald's restaurant at the rest area. She notified a clerk at the Gulf Express gas station and he ran out and copied the registration from the truck's trailer.

Magarian spoke with Girl 1 who detailed the perpetrator's actions and described the man and his clothing. Magarian contacted Western Express, Inc. ("Western Express") and identified himself and stated that he was looking for a Western Express truck. The employee informed Magarian that the truck was still in central Massachusetts and gave him its location. Magarian went to the Sturbridge State Police barracks and there met with Sturbridge police officer Joseph Bellotte. The two went to the Pilot Truck Stop in Sturbridge, where the truck was believed to be. There they met with Trooper Hazelton who was standing by for their arrival. Magarian saw a man matching the description of the perpetrator given by Girl 1 and Hockenberry. He approached and spoke with Ogidi.

Magarian asked Hazelton to have the three women (Hockenberry, Girl 1 and Girl 2) driven to the Pilot Truck Stop to see if they could identify Ogidi. Trooper D'Angelo brought them to the Pilot Truck Center. Girl 1 positively identified Ogidi as the man who had assaulted her. Magarian, in the presence of two other troopers, advised Ogidi that he was under arrest. Magarian asked Ogidi to put his hands behind his back and Ogidi actively resisted handcuffing. Ogidi was aggressive and abusive toward the officers and continued to resist as officers tried to handcuff him. The officers were unable to restrain him and one of the troopers, not Magarian, drew his Taser and tasered Ogidi. Ogidi's knees went weak and he went to the ground, where he continued to resist. The same trooper conducted a "drive stun" to Ogidi's upper shoulder area and the officers were able to handcuff him.

Once he was on the ground and handcuffed, Ogidi refused to stand under his own power, and yelled for an ambulance. Sturbridge EMS was dispatched to the scene immediately. When Sturbridge EMS arrived on scene, Ogidi became verbally aggressive. He was unwilling to

5

stand on his own and stated that he could not move his legs because of being tasered. He was placed on a backboard and then on a stretcher for transport. Once in the ambulance, the EMS personnel exited the ambulance and asked for an officer to be present in the ambulance because of Ogidi's aggressive behavior. Ogidi was brought to the emergency room at Harrington Hospital. He underwent diagnostic x-rays and was seen by an emergency room physician. Ogidi was advised that he was not injured, that all tests were negative and that he was to be discharged without restrictions. Ogidi demanded to be further evaluated. He was given Motrin and a Lidoderm patch and was discharged.

Once discharged, Ogidi was uncooperative in getting into a cruiser for transport. He was accompanied to the door by emergency room personnel and refused to walk to the cruiser, which was a few feet away. Instead, he opted to sit on the ground. At that time, Ogidi was 6' tall and weighed 284 pounds. An additional trooper was called to assist in getting Ogidi into the cruiser. Additional local officers were called to assist as the two troopers were unable to get Ogidi into the cruiser. Finally, five officers were able to get Ogidi onto a backboard and carry him to the cruiser-- he was placed inside with troopers on one side pushing and the other side pulling him into the backseat. At the Charlton barracks, it took five troopers to place Ogidi into his cell. During the struggle to put Ogidi into the cruiser, Magarian took a pillow from the stretched and placed it under his head to prevent him from injuring himself.

Immediately after Ogidi was placed in a cell at the Charlton State Police barracks, he stood and walked over to the commode to urinate. Ogidi admits that Magarian did not taser him. Magarian is 5' 7" tall and weighed 170 pounds at the time of the incident. Ogidi testified that the instances of Magarian's excessive force were Magarian "slamming" him to the ground

6

immediately after he had been tasered. and Magarian and four other officers "dragging" him on the ground prior to getting him loaded into the police cruiser at Harrington Hospital. Ogidi testified that the distance from where he sat on the ground after discharge to the cruiser door was ten feet.

## **Discussion**

The Defendant asserts that he is entitled to summary judgment on Ogidi's Section 1983 excessive force claim because he did not use excessive force to effectuate his arrest and therefore, there has been no Fourth Amendment violation. In the alternative, he argues that he is entitled to qualified immunity. Ogidi, on the other hand, argues that he was suffered serious back injuries during his arrest by Magarian, and there is a genuine issue of material fact as to how he sustained his inuries.

In order to establish a claim under Section 1983, Ogidi must establish that a person acting under the color of law denied him a right secured by the constitution or by federal law. Magrain concedes that he was acting under the color of law and therefore, the issue before the Court is whether he violated Ogidi's Fourth Amendment constitutional right by using excessive force when arresting him.

When a police officer arrests an individual, he violates that individual's rights under the Fourth Amendment when using more force than is objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Whether the force used was objectively reasonable requires a fact-specific inquiry of the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

7

arrest by flight." *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir.2007) (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Court also must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" and that "[n]ot every push or shove ... violates the Fourth Amendment." *Id.*, at 396–97 (internal quotation marks and citation omitted). The officer's subjective motivation is irrelevant to the analysis. *Id.*, at 397.

In this case, viewing the facts in a light most favorable to Ogidi, the undisputed facts are that: he was identified as the individual who committed an alleged indecent assault and battery on a seventeen year old girl; he actively resisted arrest by refusing to be handcuffed and was abusive toward the officers; one of the officers (not Magarian) tasered him and he went to the ground; Ogidi could not get up from the ground and was placed on a backboard and stretcher and placed into the ambulance; because of Ogidi's aggressive behavior in the ambulance, EMS personnel requested for an officer to be present in the ambulance; after undergoing diagnostic x-rays at the hospital, the emergency room physician advised Ogidi that all tests were negative, he has not suffered any injury and he was being discharged without restrictions; after demanding further evaluation, Ogidi was given Motrin and a Lidoderm patch; upon discharge, Ogidi was uncooperative in getting into a cruiser for transport and refused to walk to the cruiser which was a few feet away; after he sat on the ground, an additional trooper was called to assist in getting him into the cruiser—in all it took five officers to get Ogidi onto a backboard and carry him to the cruiser; Ogidi was placed inside the cruiser with troopers on one side pushing and the other

8

side pulling him into the backseat; at the Charlton barracks, it took five troopers to place Ogidi into his cell; and once in his cell, Ogidi got up and walked to the urinal.

Weighing the *Graham* factors, Ogidi was charged with a serious offense. He was being verbally abusive and aggressive—he refused to be handcuffed, which could pose a danger to the officers, and when put into the ambulance, he was aggressive to the point where EMS personnel requested that an officer ride in the ambulance. Therefore, I find that Ogidi was a danger to the police or others. As to the last factor, Ogidi actively resisted arrest from the initial interaction with Magarian, and again when officers attempted to place him in the cruiser after the hospital visit. That Ogidi was being aggressive and resisting arrest was reported not only by the police, but by third party witnesses.

Ogidi acknowledges that Magarian is not the trooper who tasered him. However, he testified at his deposition that Magarian slammed him to the concrete immediately after he had been tasered. First, third party witnesses have uniformly sworn under oath that Magarian did not slam Ogidi to the ground. Moreover, even assuming that Magarian forced Ogidi to the ground, it is undisputed that Ogidi was actively resisting arrest and continued to do so after being tasered. Under those circumstances, applying the *Graham* factors, the force which Ogidi claims was utilized by Magarian would have been reasonable. Therefore, I find that, as a matter of law, Magarian is entitled to summary judgment.

## Conclusion

Defendant Jamie Magarian's Motion for Summary Judgmnet (Docket No. 38) is ***granted***.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**